**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | |
|---|---|
| RICHARD KROLL,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER LIAKOPOULOS, RUBEN REYNOSO, DAVID O'NEAL BROWN, CITY OF CHICAGO<br><br>Defendants. | Case No.____________<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff RICHARD KROLL, by his attorneys, Loevy & Loevy, complains of Defendants Chicago Police Department Officer CHRISTOPHER LIAKOPOULOS, Chicago Police Department Officer RUBEN REYNOSO, Former Chicago Police Superintendent DAVID O'NEAL BROWN, and the CITY OF CHICAGO, and states as follows:

## INTRODUCTION

1. Plaintiff Richard Kroll, an innocent civilian walking down a busy street, found his life drastically altered after he was shot by Chicago Police Department ("CPD") Officers, Defendants Christopher Liakopoulos and Ruben Reynoso.

2. Kroll had done nothing wrong. Yet the dangerous act of firing a weapon down a street resulted in the obvious consequence of someone being shot by

the police even though they had committed no wrongdoing whatsoever. Though Plaintiff is lucky to have his life, he has suffered profound damages.

3. As Chicago officers, Defendants Liakopoulos and Reynoso did not exercise due care because the informal practices of the City of Chicago allow CPD officers to fire their guns with virtual impunity, even when there is a clear risk of harming—or even striking—people who are entirely innocent. Indeed, as evidence of this custom, a CPD supervisor wrote a false narrative report attempting to justify shooting an innocent person rather than seeking to discipline the officers. This must stop.

4. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and Illinois law to hold Defendants accountable for their illegal actions that violated Kroll's constitutional rights, and to redress the injuries he suffered due to the Defendant's conduct and the failed practice of the City of Chicago.

## JURISDCTION AND VENUE

5. Richard Kroll brings this action pursuant to 42 U.S.C. § 1983 and Illinois law to redress Defendants' tortious conduct and the deprivation under color of law of his rights secured by the United States Constitution.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

7. Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district and the events and omissions giving rise to his claims occurred here.

## PARTIES

8. Plaintiff Richard Kroll is a 36-year-old man and resident of the Pilsen neighborhood in Chicago.

9. Defendant Christopher Liakopoulos was at all relevant times a duly licensed Chicago Police Officer holding the rank of Sergeant. He engaged in the conduct complained of in the course and scope of his employment and under color of law. He is sued in his personal capacity.

10. Defendant Ruben Reynoso was at all relevant times a duly licensed Chicago Police Officer. He engaged in the conduct complained of in the course and scope of his employment and under color of law. He is sued in his personal capacity.

11. Defendant David Brown was at all relevant times a duly licensed Chicago Police Officer holding the rank of Superintendent. He engaged in the conduct complained of in the course and scope of his employment and under color of law. He is sued in his personal capacity.

12. Collectively, Defendants Liakopoulos and Reynoso are known as the "Police Officer Defendants."

13. Defendant City of Chicago is a municipal corporation that is or was the employer of the above-named defendants. Each of the individually named Police Officer Defendants and Defendant Brown acted as agents or employees of the City of Chicago during all relevant times. The City of Chicago is liable for all torts committed by the Defendants pursuant to the doctrine of *respondeat superior*.

Additionally, the City of Chicago is responsible for the policies and practices of the CPD.

## FACTS

### The Shooting

14. On the morning of July 22, 2022, Defendant Officers Liakopoulos and Reynoso were driving an unmarked vehicle on 18th Street in the Pilsen Neighborhood of Chicago.

15. The unmarked car was a black sedan that looked like a normal car, and neither officer was wearing a uniform.

16. Relevant here, the officers drove west on 18th Street past Morgan Street, another half block down to a stop sign at Miller Street. The area on 18th Street near Morgan and Miller in Pilsen is filled with all sorts of businesses including restaurants, bars, retail apparel, jewelry, and shoe stores, music venues, etc.

17. In addition, the entire area is full of dense residential housing.

18. There is also a large middle school, Joseph Jungman Public School, on 18th and Miller.

19. Defendants Liakopoulos and Reynoso were on their way to a training and not supposed to be actively patrolling or conducting traffic stops.

20. Nonetheless, when Defendants Liakopoulos and Reynoso passed Morgan and got to Miller, they stopped their car and reversed backwards. They displayed no sirens or lights in so doing.

21. The Police Officer Defendants backed up their vehicle past a few teens, who were standing near a mixed-use building with a shoe-repair store on the first floor, residential housing above, and with a residential building next door.

22. Up the block, two other young men were walking westward on 18th Street toward Miller and right across the street from the flower shop at 18th and Morgan.

23. One of the men was 23-year-old Miguel Medina. At the time, Medina was holding a cellphone and a bottle of wine. The other teenager ("Unknown young man") was holding some sort of bag.

24. The Police Officer Defendants backed up their vehicle again nearer to Medina and the Unknown young man.

25. Shortly after, Medina and the young man approached the unmarked car parked in the middle of the street facing the wrong direction and showed the Police Officer Defendants the cell phone and bottle of wine, and that he had nothing else in his hands.

26. Still seated in the car, one of the Police Officer Defendants stuck his arm out the window brandishing a weapon and began shooting at Medina and the Unknown young man.

27. Medina and the Unknown young man were obviously shocked at this turn of events.

28. Medina was shot three times, including twice in the back, and fell to the ground.

29. Showing obvious signs of terror and surprise, the Unknown young man began running eastward on 18th Street away from the Police Officer Defendants.

30. As the Unknown Young Man was simply fleeing the scene of a shooting to avoid being killed, both Defendant Police Officers got out of the unmarked car, turned up the street and began firing up the street towards the Unknown young man.

**Kroll Gets Shot By CPD Officers**

31. Meanwhile, Kroll and his friend were walking along 18th Street after a gym class.

32. As they walked, Kroll heard "popping" sounds behind him. He turned around and saw a car in the middle of the road and someone on the ground.

33. The car ended up being the Police Officer Defendants' unmarked vehicle and it was Medina on the ground after having been shot.

34. Once Kroll realized the noise he heard was gunshots, he started sprinting eastward down 18th Street to avoid being shot.

35. His efforts failed. Kroll was shot by the Police Officer Defendants.

36. Shortly after, Kroll went to the hospital where it was determined that he had been hit by a bullet. He had to receive medical care on his leg where he was hit, including stitches.

**An Attempted CPD Cover-Up**

37. After shooting Medina and Plaintiff, the Defendant Officers made statements to investigators. Among other things, they claimed that they discharged

their weapons only after being fired on with a rifle by the Unknown young man.

38. Acting pursuant to the custom of the Department to defend officers even by fabricating documents, Defendant Superintendent Brown provided a statement purporting to corroborate this account.

39. This claim was completely false. The officers fired first, striking Medina three times, as shown on surveillance video that captured the shooting of Medina and events just before it.

40. If it were not for the recovery of surveillance video capturing the shooting, the Police Officer Defendants would have evaded all responsibility from this shooting, including recklessly shooting Plaintiff Kroll.

41. Defendants Liakopoulos and Reynoso were both criminally charged with aggravated battery of a firearm, aggravated discharge of a firearm, and official misconduct in connection with shooting Medina and then attempting a cover-up by lying about it. Their criminal prosecution is ongoing.

**CPD's Track Record of Injuring the Innocent and Blessing Cover-Ups**

42. Unfortunately, Richard Kroll is just one of many innocent people who have been harmed due to the recklessness of Chicago Police Officers.

43. CPD has a history of injuring innocent people going back decades.

44. For example, on August 29, 1988, Irene Oledzka was shot in the leg by a Chicago police officer who was attempting to arrest two robbery suspects.

45. On June 27, 2004, Chantel Davidson was shot in the shoulder by Chicago police officers who were shooting at a suspect who ran into a residential building. She was 13 years old.

46. On March 21, 2012, Rekia Boyd was killed by an off-duty Chicago police detective after he fired into a crowd of people attending a party in Douglas Park. She was 22 years old.

47. On January 1, 2014, then pregnant Kierra Williamson was shot by a stray bullet from a Chicago police officer's gun after the officer indiscriminately shot inside a Roseland neighborhood home.

48. On December 26, 2015, Bettie Jones was shot and killed by Chicago police officers who were responding to a 911 call for assistance with a teenager who was experiencing a mental health crisis.

49. On June 3, 2020, Guadalupe Francisco-Martinez was killed after she was hit by a police squad car during a police chase. She was 37 years old and a mother of six.

50. Given this history, it is obvious that the City of Chicago and its police department has failed to take adequate measures to protect innocent bystanders from police violence, including holding officers who inflict such harm accountable.

51. Acting pursuant to the City's official practices and customs, officers routinely engage in "cover-ups" as part of the "code of silence" within the CPD.

52. In 2007, Karolina Obrycka was beaten by Chicago Police Department Officer Anthony Abbate, Jr., who then invoked the "code of silence" to attempt to cover up for the unjustified use of force.

53. In 2012, a civil jury later found the city liable to Obrycka due to the City's policy and practice of a code of silence to encourage cover-ups, as happened to Obrycka and to Plaintiff here.

54. Most famously, in October of 2014, Jason Van Dyke shot and killed Laquan McDonald. As here, Van Dyke and other officers falsely indicated in their statements and reports that McDonald had attacked the officer, prompting the use of deadly force.

55. And, as here, these false claims were proven untrue due to video that was later released.

56. Through a prior mayor and other officials, the City has later admitted that CPD had a code of silence that served to enable police to attempt to cover-up misconduct.

57. As further evidence of the City's practices and customs concerning attempts to cover-up acts of police violence, the Department of Justice investigated the Chicago Police Department and in 2017 found, among other things, that investigative fact finding was frustrated due to a code of silence, that many CPD leaders acknowledge a code of silence exists, and that the code of silence even extends to lying and affirmative efforts to conceal evidence.

58. Indeed, the Department of Justice found, the code of silence goes beyond passive acts and is apparently strong enough to incite officers to lie even when they have little to lose by telling the truth.

59. Despite the fact the City of Chicago was well aware of its ongoing code of silence, by 2022 it had done nothing to prevent the Defendant Police Officers here from lying or attempting to cover up their unlawful acts, or to prevent a sergeant, Defendant Brown, from making false reports as well.

60. The City of Chicago was, and remains, deliberately indifferent to the harmful acts—including potential death by unjustified shooting—caused by its ongoing code of silence and cover-up-culture.

**Kroll's Damages**

61. Because of Defendants' misconduct, Kroll had to receive urgent medical attention for his injuries. He had to receive stiches on the wound he received from the bullet in addition to being prescribed medication to deal with the pain of the wound.

62. In addition to the trauma of being shot by the police, Defendants' misconduct continues to cause Kroll extreme emotional and psychological pain and suffering including constant fear, nightmares, and anxiety. His psychological injuries led to weight loss and the need to miss work. Kroll also lives with a severe distrust of law enforcement.

## COUNT I
## 42 U.S.C. § 1983 – Excessive Force in Violation of the Fourth and Fourteenth Amendments

63. Plaintiff incorporates each paragraph of this Complaint as if restated fully herein.

64. In the manner described more fully above, the Police Officer Defendants discharged a lethal weapon towards Plaintiff without probable cause.

65. The Police Officer Defendants were acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment.

66. The Defendants' misconduct directly resulted in Plaintiff's harm, violating his rights under the Fourth and Fourteenth Amendment of the United States Constitution.

67. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and with reckless indifference and in total disregard of Plaintiff's constitutional rights.

## COUNT II – 42 U.S.C. § 1983
## Conspiracy

68. Plaintiff incorporates each paragraph of this Complaint as if restated fully herein.

69. The Defendants conspired with one another to cover the unlawful actions of Defendants Liakopoulos and Reynoso and took affirmative acts in

furtherance of this conspiracy, including making false statements to investigators and prosecutors.

70. The foregoing actions of the Defendants were the direct and proximate cause of the violations of Plaintiff's constitutional rights.

71. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and with reckless indifference and in total disregard of Plaintiff's constitutional rights.

**COUNT III – 42 U.S.C. § 1983**
**Municipal Liability**

72. Plaintiff incorporates each paragraph of this Complaint as if restated fully herein.

73. As described more fully above, the City of Chicago is itself liable for the violation of Plaintiff's constitutional rights. The Chicago Police Department is a subsidiary division of Defendant City of Chicago. The City of Chicago exercises exclusive control over the Chicago Police Department's policies and procedures, as well as the conduct of all of its agents and employees, including Defendants.

74. Plaintiff's injuries were caused by the policies, practices, and customs of the Chicago Police Department, including Defendants in particular, in that Defendants injured Plaintiff by recklessly discharging their weapons with complete disregard to pedestrians in the area.

75. The institutional desire to hide police misconduct and not shed light into the innocent victims of police violence was known to command personal, who

themselves participated in the practice.

76. The above-described widespread practices, which were so well-settled as to constitute the de facto policy of the Chicago Police Department, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it. Furthermore, the above-described widespread practices were allowed to flourish because the Chicago Police Department declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents who either (1) harmed innocent bystanders while recklessly deploying lethal force or (2) fabricated statements and evidence to cover-up such incidents.

77. The constitutional violations described in this Complaint were also undertaken pursuant to the policy and practices of the Chicago Police Department in that the constitutional violations were committed with the knowledge or approval of persons with final policymaking authority for City of Chicago and the Chicago Police Department.

78. The Defendant Police Officers had every reason to know that they would enjoy de facto immunity from criminal prosecution and/or Departmental discipline. The failure of holding police officers accountable for this type of misconduct coupled with the failure to adequately train its police officers, caused the misconduct at issue in this case.

79. The policies, practices, and customs set forth above were the moving force behind the violation of Plaintiff's constitutional rights.

**COUNT IV**
**Illinois State Law Claim - Battery**

80. Plaintiff incorporates each paragraph of this pleading as if restated fully herein.

81. As described more fully above, Police Officer Defendants injured Plaintiff after knowingly discharging a lethal weapon on a public street with pedestrians present.

82. The Police Officer Defendant's action of shooting down a street with others present, without cause, led to Plaintiff's injuries.

**COUNT V**
**Illinois State Law Claim – Intentional Infliction of Emotional Distress**

83. Plaintiff incorporates each paragraph of this pleading as if restated fully herein.

84. Defendants' actions, omissions, and conduct, as set forth above, were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or with reckless disregard for the probability that they would cause Plaintiff severe emotional distress, as more fully alleged above.

85. As a direct and proximate result of the Defendants, Plaintiff suffered and continues to suffer emotional distress and other grievous and continuing injuries and damages as set forth above.

**COUNT VI**
**State Law Claim – Civil Conspiracy**

86. Plaintiff incorporates each paragraph of this Complaint as if restated fully herein.

87. As described more fully above, the Defendants reached an agreement among themselves to fabricate statements to cover up the Police Officer Defendants' misconduct and protect themselves from liability.

88. In furtherance of their conspiracy, each co-conspirator committed overt acts and was otherwise a willful participant in joint activity.

89. In furtherance of this conspiracy, a tortious action was committed against Plaintiff.

90. As a result of the Defendant's misconduct described in this Count, Plaintiff suffered damages as set forth above.

**COUNT VII**
**State Law Claim – *Respondeat Superior***

91. Plaintiff incorporates each paragraph of this Complaint as if restated fully herein.

92. While committing the misconduct alleged in the preceding paragraphs, the Police Officer Defendants were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment.

93. Defendant City of Chicago is liable as principal for all state law torts committed by its agents.

**COUNT VIII**
**State Law Claim – Negligence**

94. Plaintiff incorporates each paragraph of this Complaint as if restated

fully herein.

95. Defendant City of Chicago, through its officers, owes a duty of care to persons with whom they can foreseeably interact with in the course of police duties, including situations involving the likely use of force. This duty entails taking reasonable care to prevent foreseeable harm during law enforcement interactions.

96. The City of Chicago owed such a duty to Plaintiff, and the actions of its agents breached that duty.

97. This breach proximately caused Plaintiff's injuries, as described and alleged above.

98. The City of Chicago is liable to Plaintiff for the negligent actions of its officers that proximately caused his injuries.

**COUNT IX**
**State Law Claim – Indemnification Pursuant to 745 ILCS 10/9-102**

99. Plaintiff incorporates each paragraph of this Complaint as if restated fully herein.

100. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

101. The Police Officer Defendants were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

102. The City of Chicago is responsible for paying any judgment entered

against the Police Officer Defendants. Plaintiff therefore demands judgment against Defendant City of Chicago in the amounts awarded to Plaintiff against the individual Defendants as damages, attorneys' fees, costs, and interest.

WHEREFORE, Plaintiff RICHARD KROLL, respectfully requests that this Court enter a judgement in his favor and against Defendants Christopher Liakopoulos, Ruben Reynoso, David O'Neal Brown, and City of Chicago, awarding compensatory damages, attorneys' fees, and costs against each Defendant, and, because they acted willfully, wantonly, and/or maliciously, punitive damages against each of the Individual Defendants, and any other relief that this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff Richard Kroll hereby demands a trial by jury pursuant to Federal Rules of Civil Procedure 38(b) on all issues so triable.

Dated: July 20, 2023

Respectfully submitted,

RICHARD KROLL

By: /s/ Carla Agbiro
*One of Plaintiff's Attorneys*

Jon Loevy
Danielle Hamilton
Carla Agbiro
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
agbiro@loevy.com